FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 11, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JENNIFER P., | No. 4:23-CV-05044-ACE |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION |
| v. | |
| MARTIN O'MALLEY, COMMISSIONER OF SOCIAL SECURITY,[1] | ECF Nos. 11, 17 |
| Defendant. | |

**BEFORE THE COURT** is Plaintiff's Opening Brief and the Commissioner's Brief in response. ECF No. 11, 17. Attorney Chad Hatfield represents Jennifer P. (Plaintiff); Special Assistant United States Attorney David J. Burdett represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Plaintiff's Motion, **DENIES** Defendant's Motion, and **REMANDS** the matter to the Commissioner for further proceedings pursuant to 42 U.S.C. § 405(g).

**JURISDICTION**

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on December 30, 2014, alleging disability since

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley, Commissioner of Social Security, is substituted as the named Defendant.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

December 16, 2014.  Tr. 15, 108, 256-71.  The applications were denied initially and upon reconsideration and an Administrative Law Judge (ALJ) held a hearing on January 5, 2018 and issued an unfavorable decision on February 22, 2018.  Tr. 12-33.  The Appeals Council denied the request for review on December 18, 2018, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed for district court review of the case, and in an order dated December 13, 2019, this Court remanded the case for further administrative proceedings.  Tr. 1220-39.  In an order dated May 8, 2020, the Appeals Council vacated the final decision of the Commissioner and remanded the case to the ALJ.  Tr. 1242-43.[2]

On September 2, 2020, Plaintiff appeared before ALJ Marie Palachuk, Tr. 1122-48, who issued an unfavorable decision on October 7, 2020.  Tr. 1651-78.  Plaintiff filed for district court review of the case and in a stipulated remand order dated January 20, 2022, this Court again remanded the case for further administrative proceedings.  Tr. 1684-86.  In an order dated March 4, 2022, the Appeals Council vacated the final decision of the Commissioner and remanded the case to the ALJ.  Tr. 1695-97.  On November 10, 2022, Plaintiff appeared before ALJ Palachuk, Tr. 1596-20, who issued another unfavorable decision on February 8, 2023.  Tr. 1557-88.  The Appeals Council did not assume jurisdiction of the case, making the ALJ's February 2023 decision the final decision of the

---

[2] The Appeals Council noted Plaintiff filed a subsequent claim for Title II disability benefits in February 2019, but that the remanded claim rendered the subsequent claim duplicate.  Tr. 1242.  The Appeals Council ordered the ALJ to consolidate the claim files and issue a new decision on the consolidated claims, applying the prior rules for reviewing medical opinion evidence pursuant to HALLEX 1-5-3-30.  *Id*.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 2

Commissioner.  Plaintiff filed this action for judicial review on April 7, 2023.  ECF No. 1.

## STANDARD OF REVIEW

The ALJ is tasked with "determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put another way, substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ.  *Tackett*, 180 F.3d at 1098; *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).  Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  In steps one through

four, the claimant bears the burden of establishing a prima facie case of disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a significant number of jobs exist in the national economy which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1497-1498 (9th Cir. 1984); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). If a claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### ADMINISTRATIVE FINDINGS

On February 8, 2023, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act. Tr. 1557-88.

At step one, the ALJ found Plaintiff, who met the insured status requirements of the Social Security Act through December 31, 2019, had not engaged in substantial gainful activity since the alleged onset date. Tr. 1563.

At step two, the ALJ determined Plaintiff had the following severe impairments: obesity; fibromyalgia; left trigger thumb, post release; bilateral ulnar nerve transposition; osteoarthritis of the bilateral hands and knees; psoriasis; degenerative joint disease of the left hip, post left hip surgery; sacralization of the L5 vertebra; depressive disorder; anxiety disorder. *Id*.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 1566.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found she could perform light work, with the following limitations:

[Plaintiff] is limited to standing/walking only two hours per workday. As a result, [Plaintiff] requires a position where she can alternate positions in order to accommodate for that two-hour limitation. [Plaintiff] can never climb ladders, ropes, or scaffolding, and can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. [Plaintiff] can frequently reach, handle, finger and feel bilaterally. [Plaintiff] must avoid concentrated exposure to extreme temperatures, humidity, vibration, and respiratory irritants. [Plaintiff] must avoid all exposure to hazards such as unprotected heights and moving dangerous machinery. [Plaintiff] requires a predictable environment with seldom change [sic]. [Plaintiff] can occasionally interact with the public. [Plaintiff] is limited to occasional and superficial interaction (defined as non-collaborative and without tandem tasks) with co-workers. [Plaintiff] can handle occasional interactions with supervisors, but with no "over the shoulder" supervision.

Tr. 1568.

At step four, the ALJ found Plaintiff was unable to perform past relevant work. Tr. 1576.

At step five, the ALJ found that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that existed in significant numbers in the national economy, including the jobs of small products assembler; production assembler; and subassembler. Tr. 1577.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from at any time from the alleged onset date through the date of the decision. Tr. 1578.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and Title XVI of the Social Security Act. The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal

ORDER GRANTING PLAINTIFF'S MOTION . . . - 5

standards.  Plaintiff raises the following issues for review: (1) whether the ALJ properly evaluated the medical opinion evidence; (2) whether the ALJ properly evaluated Plaintiff's symptom complaints; (3) whether the ALJ conducted a proper step-three analysis; and (4) whether the ALJ conducted a proper step-five analysis. ECF No. 11 at 8.

## DISCUSSION

### A. Medical Opinion Evidence

Plaintiff contends the ALJ erred by improperly evaluating the medical opinions of Jean You, M.D., and James Opara, M.D.  ECF No. 11 at 10-16.

For claims filed prior to March 2017, there are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).  Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not . . . and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.*  The opinion of a nonexamining physician may serve as substantial evidence if it is "supported by other evidence in the record and [is]

ORDER GRANTING PLAINTIFF'S MOTION . . . - 6

consistent with it." *Andrews*, 53 F.3d at 1041.

    *1. Dr. You*

    On November 8, 2022, treating provider Dr. You completed a medical report form and rendered an opinion of Plaintiff's level of functioning. Tr. 2165-67. Dr. You noted she had treated Plaintiff from May of 2014 through September 2022, and her next appointment was scheduled for November 2022. Tr. 2165. She noted Plaintiff's diagnoses were fibromyalgia, osteoarthritis of the right knee and hip, and osteoporosis. *Id*. She noted Plaintiff's symptoms included "widespread pain, especially of [of her] hip and knee," fibromyalgia pain in fatty tissue areas, and she explained that that hip and knee pain caused Plaintiff difficulty in walking and sitting. *Id*. She opined Plaintiff had to elevate her legs 20-30 minutes per day after activities such as light housework, and that treatment at that time included Tylenol 3 and muscle relaxers (methocarbamol). *Id*. She indicated Plaintiff also had depression and anxiety, which in her opinion were reasonably likely to cause pain, and that her prognosis was fair. *Id*.

    Dr. You opined work on a regular and continuous basis would cause Plaintiff's condition to deteriorate and that if she attempted a 40-hour per week schedule she would miss work an average of four days or more of work a month. Tr. 2165-66. Dr. You explained that when Plaintiff was employed, she missed up to a day a regularly. Tr. 2166. She opined plaintiff was limited "50/50" between sedentary work and "severely limited," defined on the form as "unable to perform the demands of even sedentary work." *Id*. She opined Plaintiff was limited to frequent use of her upper extremities, and that based on the cumulative effect of all limitations Plaintiff would likely be off task and unproductive over 30 percent of the time during a 40-hour work week. Tr. 2166-67. She opined these limitations existed at least since December 2019 and explained that the "above assessment is mostly based on [Plaintiff's] subjective report and my professional experience treating [her] for fibromyalgia for the past eight years." Tr. 2167.

1    The ALJ gave Dr. You's opinion little weight because Dr. You indicated it

2    relied heavily on Plaintiff's allegations, rather than observational or objective

3    evidence and, and because while Dr. You noted her treatment of Plaintiff

4    contributed to her conclusions she did not identify any evidence that supported her

5    limitations.  Tr. 1574.  The ALJ also found "[Dr. You's] records [were] not

6    particularly consistent with her own assessment," and that "while fibromyalgia

7    often eludes objective evidence, Dr. You's records consistently show substantial

8    improvement in symptoms and functionality" and "this significant improvement

9    documented throughout long periods of treatment is not consistent with such

10    extreme limitations."  *Id*. (citing Tr. 2036-63).

11    Plaintiff contends the ALJ's finding that Dr. You relied primarily on

12    Plaintiff's subjective complaints was not accurate, and that Dr. You's limitations

13    were not extreme but, rather, were consistent with the condition of fibromyalgia,

14    and the testimony of medical experts, as well; and that the ALJ failed to properly

15    evaluate the updated medical record.  ECF No. 11 at 11-14.  Defendant contends

16    the ALJ reasonably evaluated Dr. You's opinion.  ECF No. 17 at 3.

17    Relevant factors to evaluating any medical opinion include the amount of

18    relevant evidence that supports the opinion, the quality of the explanation provided

19    in the opinion, and the consistency of the medical opinion with the record as a

20    whole.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*,

21    495 F.3d 625, 631 (9th Cir. 2007).  Moreover, a physician's opinion may be

22    rejected if it is unsupported by the physician's treatment notes.  *See Connett v.*

23    *Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003).  Additionally, the Ninth Circuit in

24    *Ghanim* contemplated that medical sources rely on self-reports to varying degrees

25    and held that an ALJ may reject a medical source's opinion as based on unreliable

26    self-reports only when the medical source relied "more heavily on a patient's self-

27    reports than on clinical observations."  *Ghanim v. Colvin,* 763 F.3d 1154, 1162

28    (9th Cir. 2014).  An ALJ must also consider all of the relevant evidence in the

ORDER GRANTING PLAINTIFF'S MOTION . . . - 8

record and may not point to only those portions of the records that bolster their findings. *See, e.g., Holohan*, 246 F.3d at 1207-08 (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others).

Here, Dr. You explained her November 2022 assessment was "mostly based on [Plaintiff's] subjective report and my professional experience treating [her] for fibromyalgia for the past eight years." Tr. 2167. Indeed, as the ALJ noted, the record contains hundreds of pages of Dr. You's treatment records from 2014 on. Tr. 491-35, 668-09, 1067-87, 1889-31, 2036-63. The ALJ failed, however, to discuss relevant evidence and treatment provided by Dr. You. Tr. 1560-78. Records show, for example, years of treatment with opiate pain medication including daily hydrocodone, morphine for breakthrough pain, and as of 2022, the substitution of Tylenol 3 for chronic pain from right knee and right hip osteoarthritis and fibromyalgia; Plaintiff's treatment and dependence on opiate pain medication, however, is not mentioned by the ALJ anywhere in the decision. Tr. 1560-78; *see* Tr. 491-35, 668-09, 1067-87, 1889-31, 2036-63. Indeed, while the ALJ concluded that Dr. You's records showed "substantial improvement in symptoms and functionality," which was in inconsistent with what the ALJ determined were extreme limitations, the ALJ failed to explain that any reduced pain level and improved function was dependent upon daily long-term treatment with opiate analgesics prescribed by pain specialist Dr. You. *Id*.

The ALJ's analysis is insufficient because she failed to account for or discuss Dr. You's extensive record, including Plaintiff's long-term treatment with opiate pain medication. On this record the ALJ's rejection of Dr. You's opinion because it was inconsistent with her treatment records was not a specific and legitimate reason supported by substantial evidence to discount the treating provider's opinion.

Dr. You's records do show Plaintiff's subjective reports of high pain levels, but these records also include years of physical exams and assessment for

fibromyalgia and osteoarthritis of the hip and knee.  Tr. 491-35, 668-09, 1067-87, 1889-31, 2036-63.  Indeed, Dr. You's records show documentation of consistent findings upon physical exam including that she was positive for more than 11 out of 18 fibromyalgia tender points and/or "widespread tenderness over fibromyalgia tender point distribution," as well as regular observation of cane use during the period at issue.  *See, e.g.*, Tr. 1461, 1480, 1490, 1893, 1910, 2163.  The ALJ provided minimal citation or discussion of Dr. You's records, however, even though she was a treating provider and met with Plaintiff regularly over the period at issue.  The ALJ focused, instead, on findings from one consultative exam in 2019 to discount Plaintiff's fibromyalgia symptoms, despite finding it a severe impairment and despite observations by treating specialist, Dr. You, at appointments a week before and a month after the consultative exam that Plaintiff had widespread tenderness over fibromyalgia tender point distribution upon physical exam.  Tr. 1893, 1896, 1571, 1944-95.  Both medical experts the ALJ relied on also testified that fibromyalgia appeared to cause most of Plaintiff's pain and that her pain levels from this condition could wax and wane; Dr. Pierko noted that while there was some inconsistency in the record as a whole concerning Plaintiff's use/medical necessity for a cane, that "pretty much every reference from that pain clinic states that her . . . exam is positive for . . . at least 11 of 18 tender points," and Dr. Krishnamurthi opined in 2020 that fibromyalgia could also affect her ability to walk differently on different days.  Tr. 50, 60-64, 1128.

There is no evidence Dr. You relied more on Plaintiff's subjective reports than her own physical exam findings and expertise in Plaintiff's condition, which she documented in years of treatment records, and this was also not a specific and legitimate reason supported by substantial evidence to discount Dr. You's opinion.

*2. Dr. Opara*

On August 1, 2015, Dr. Opara conducted a physical consultative examination and rendered an opinion on Plaintiff's level of functioning.  Tr. 655-

60.  Dr. Opara diagnosed Plaintiff with status post ulnar transposition involving both elbows for bilateral cubital tunnel syndrome with good handgrip and strength; left knee osteoarthritis with normal range of motion; left thumb trigger finger, improved with surgery; positional vertigo with normal neurological exam; and shingles, noting she was in remission for that condition at the time.  Tr. 658.  Dr. Opara opined her prognosis was good.  *Id*.  He opined she could stand and walk less than two hours in an eight-hour workday "due to her tenderness and limited motion of both hips"; and she could sit without limitation; and that she used a cane as an assistive device.  Tr. 659.  Dr. Opara opined she could lift and carry 10 pounds occasionally and 10 pounds frequently "due to the severe tenderness and limited motion of both hips and the antalgic gait.  It would be hard for her to carry or manipulate heavier objects."  *Id*.  He opined she could occasionally climb steps and stairs, and should never climb ladders, scaffolds, and ropes; and she could occasionally stoop, crouch, kneel, and crawl.  *Id*.

The ALJ found Dr. Opara's opinion was due only partial weight, concluding that "the postural limitations [were] warranted because Plaintiff has shown limited range of motion and antalgic gait.  However . . . this gait disturbance [was] not universal, and [Plaintiff] often show[ed] normal gait and station findings."  Tr. 1573.  The ALJ also found that "Dr. Opara's evaluation suffers from some inconsistency.  For example, [Plaintiff's] hips are noted as having substantial limitation in range of motion, but there is no assigned impairment.  Conversely, [Plaintiff's] knees showed no deficits on examination, but osteoarthritis was diagnosed nonetheless."  *Id*.  The also ALJ found Dr. Opara did not provide justification for his opinion a cane was medically necessary, and the ALJ concluded that "although the [Plaintiff's] lower extremities have limitations reducing lifting and carrying capacity, the evidence has not established these impairments are so severe she is unable to lift and carry at the light level, and the

upper extremity findings suggest they would not contribute to a deficit in this area." *Id*.

Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. Additionally, the extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion. *See* 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6). Here, the ALJ concluded Dr. Opara's opinion was internally inconsistent because he noted range of motion issues in her hips without assigning an impairment and because he diagnosed osteoarthritis even though her "knees showed no deficits on examination." Tr. 1573. Dr. Opara explained, however, that he reviewed records including progress notes from Plaintiff's orthopedic provider from January 2015; these records included follow up for bilateral knee issues, including left knee injection(s) and right knee pain; and MRI findings on the left knee showed left knee osteoarthrosis, bursitis, and chondromalacia. Tr. 635-38. Along with reviewing treatment records, Dr. Opara interviewed Plaintiff about her medical history and performed a physical exam; he noted Plaintiff's history of knee issues including diagnosis of osteoarthritis, as well as her report of knee pain at 5 out of 10. Tr. 655. Dr. Opara also noted Plaintiff's medical history of bilateral hip osteoarthritis and observed her "obvious painful discomfort" and "a duckling and antalgic gait" upon physical exam. Tr. 656-58. Dr. Opara further observed she was "unable to walk or stand without the cane," she "had a lot of problems climbing up and down the exam table . . . problems taking her shoes off and putting them back on," and that she had "diminished range of motion of both hip joints" upon physical exam. Tr. 657. Dr. Opara's supported his diagnoses and medical source statement with a review of medical records, including imaging, as

well as his own history and physical exam, and the ALJ's finding his opinion was due less weight because it was internally inconsistent is not supported by substantial evidence. This was not a specific and legitimate reason to discount his opinion.

The ALJ also discounted Dr. Opara's opinion because he did not provide justification for his finding that Plaintiff's use of a cane was medically necessary. Tr. 1753. However, Dr. Opara explained he observed that she was "unable to walk or stand without the cane," and that she had a "duckling and antalgic gait" and "diminished range of motion of both hip joints" upon physical exam. Tr. 656-58. Dr. Opara supported his opinion that a cane was medically necessary at that time with his own observations and physical exam findings, and the ALJ's rejection of the opinion because Dr. Opara did not provide justification for it was not a specific and legitimate reason supported by substantial evidence to discount the opinion.

Finally, the ALJ discounted Dr. Opara's opinion because the evidence did not establish her lower extremity impairments were "so severe she [was] unable to lift and carry at the light level, and the upper extremity findings suggest they would not contribute to a deficit in this area." Tr. 1573. However, the ALJ provided no analysis here to support this reasoning, failed to account for Plaintiff's fibromyalgia, and Dr. Opara's opinion that she was limited to sedentary level lifting and carrying also appears consistent with every other examining and treating physician who evaluated Plaintiff, as well as state agency medical consultant Dr. Staley's 2016 reconsideration opinion; all limited Plaintiff to no more than sedentary work.[3] Tr. 1573; *see e.g.*, Tr. 153-54, 1944-45, 2165-67.

---

[3] While the ALJ found the 2019 state agency opinions limiting Plaintiff to light level lifting and carrying "partially persuasive," the 2019 reviewers only evaluated Plaintiff's subsequent application, which was filed in February 2019 with an alleged onset date of February 2018; and the state agency reviewers found her

The ALJ's conclusion Dr. Opara's opinion was due less weight because the evidence failed to establish Plaintiff's lower extremity impairments were "so severe she [was] unable to lift and carry at the light level, and the upper extremity findings suggest they would not contribute to a deficit in this area" was also not a specific and legitimate reason supported by substantial evidence to discount his opinion.

The ALJ failed to properly evaluate the medical opinions of treating specialist Dr. You and consultative examiner Dr. Opara. Upon remand the ALJ reconsider all medical opinion evidence with the assistance of a medical expert, preferably one with expertise or in treating fibromyalgia and/or chronic pain.

**B. Plaintiff's Symptom Claims**

Plaintiff contends the ALJ erred by improperly rejecting Plaintiff's symptom testimony. ECF No. 11 at 18-21. It is the province of the ALJ to make determinations regarding a claimant's subjective statements. *Andrews,* 53 F.3d at 1039. However, the ALJ's findings must be supported by specific, cogent reasons.

---

fibromyalgia unsupported based only on Dr. Weir's 2019 consultative exam. Tr. 1575; *see* Tr. 1188-89, 1196-98, 1202-04, 1210-13, 1624-36. Further, the ALJ weighed/credited these 2019 state agency opinions twice, concluding that Plaintiff filed two additional claims. Tr. 1575. Review of the administrative record, however, shows Plaintiff's 2019 application was exhibited twice; and even a cursory review of the exhibits the ALJ cited concerning "a subsequently-filed claim" and then "an additional subsequent claim" (13A, 15A, 19A, 21A) reveals these are duplicates of the July and November 2019 initial and reconsideration opinions by state agency reviewers Dr. Platter and Dr. Rubio. *See* Tr. 1633, 1637, 1647, 1650. The ALJ's failure to realize these are the same opinions lends weight to Plaintiff's allegation that the ALJ failed to properly evaluate the updated medical record. ECF No. 11 at 14.

*Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment merely because it is unsupported by medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing."  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester*, 81 F.3d at 834.  "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester* at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.  Tr. 1570.

### 1. Objective Evidence

The ALJ discounted Plaintiff's symptom complaints because the objective record was not fully consistent with Plaintiff's allegations.  *Id.*  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d at 676, 680 (9th Cir. 2005).  However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Here, the ALJ concluded that Plaintiff's subjective allegations were not consistent with the objective medical evidence. Tr. 1570. The ALJ focused, however, solely on Plaintiff's use of a cane and whether a cane was medically necessary, and her allegation she needed to lay down frequently, both of which the ALJ discounted. Tr. 1570-71. However, as noted *supra* in relation to the medical opinion evidence, the ALJ failed to discuss relevant objective findings, including years of physical exam findings by Plaintiff's treating specialist, as well as years of treatment with opiates daily for chronic pain. *See* Tr. 491-35, 668-09, 1067-87, 1889-31, 2036-63. As discussed above, an ALJ must also consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster their findings. *See, e.g., Holohan*, 246 F.3d at 1207-08 (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others).

Further, "In evaluating whether a claimant's residual functional capacity renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods." *Revels v. Berryhill*, 874 F.3d 648, 662 (9th Cir. 2017). Fibromyalgia is a disease that eludes objective measurement. *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). Additionally, "a person with fibromyalgia may have 'muscle strength, sensory functions, and reflexes [that] are normal.'" *Revels*, 874 F.3d at 663. Normal objective examination results can be "perfectly consistent with debilitating fibromyalgia." *Id.* at 666. Additionally, "the symptoms of fibromyalgia 'wax and wane,' and a person may have 'bad days and good days.'" *Id.* While the mere diagnosis of an impairment is not sufficient to sustain a finding of disability, "[i]n evaluating whether a claimant's residual functional capacity renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods." *Id.* at 662.

There are years of records with objective findings from physical and mental status exams related to Plaintiff's numerous physical and mental impairments, including fibromyalgia, which the ALJ failed to discuss in the 2023 decision; the ALJ focused, instead, on discounting Plaintiff's symptom complaints because she regularly used a cane and reported a need to lay down frequently when her fibromyalgia symptoms flared. Tr. 1580-71. Pain clinic records for each visit during the years at issue in this case include a history with Plaintiff's report of her average pain levels that day and week, as well as factors that aggravate and alleviate her pain; her list of factors always included lying down. *See, e.g.*, Tr. 532, 1460, 1466, 2036, 2042, 2104. The ALJ provided limited to no analysis in the 2023 decision of objective findings concerning her physical and mental impairments, and the ALJ's conclusion that the objective record was not fully consistent with Plaintiff's allegations is not supported by substantial evidence.

### 2. Activities of Daily Living

The ALJ found Plaintiff's level of activity was not fully consistent with her allegations. Tr. 1571. The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina v. Astrue,* 674 F.3d 1104, 1113 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§ 404.1502(a), 416.902(a). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

Here, the ALJ pointed to Plaintiff's general ability to weed in her garden for 45 minutes, care for pets, do light housework, drive, shop for necessities and pay bills as inconsistent with her allegations, particularly her allegation that she needs to lay down and rest. Tr. 1571. None of these activities, however, are inconsistent with Plaintiff's allegations of chronic pain and other symptoms preventing her from working a full-time job during the period at issue. The Ninth Circuit has repeatedly found that the ability to perform these kinds of activities is not inconsistent with the inability to work:

> We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.

*Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

The ALJ also discounted Plaintiff's reports because "her function has improved significantly with pain medication usage from 2018 through 2022," but as discussed *supra* the ALJ failed to discuss anywhere in the decision the fact that Plaintiff was prescribed narcotic/opiate medication for treatment of chronic pain. Further, while records from her treating pain specialist show that Plaintiff reported some improvement in functioning with her opiate regimen, she also regularly reported high pain levels or continued pain interference with activities even with such medications. *See e.g.*, Tr. 532, 674-75, 678, 682, 1460, 1466, 2042, 2104, 2121. The ALJ's analysis is insufficient, and the ALJ's conclusion Plaintiff's level of activity was not fully consistent with her allegations was not a clear and convincing reason supported by substantial evidence to discount her symptom claims.

### 3. Improvement with Conservative Treatment

The ALJ also found the record showed Plaintiff had significant improvement with conservative treatment. Tr. 1571. Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of an impairment. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (holding the ALJ permissibly inferred that the claimant's "pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program" and "responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset"). Additionally, the effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.913(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti*, 533 F.3d at 1040 (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

Here, the ALJ found "the record shows [Plaintiff] has had significant improvement often with conservative treatment." Tr. 1571. The ALJ noted Plaintiff's finger and bilateral arm nerve transposition surgeries resulted in substantial improvement but then also acknowledged "surgical intervention would not be characterized as conservative treatment." *Id*. Otherwise, the ALJ found only that "daily functioning and mood have improved with conservative treatment, and the [Plaintiff] was doing well with pain medicines." *Id*. (citing Tr. 668, 20, 731-780, 781-91). The ALJ cited to only two actual office visit records directly, however, and otherwise cited generally to entire exhibits, without discussion or explanation of how the records support her findings. Tr. 1571-72. Review of the few actual visits cited also shows, for example, that while Plaintiff's pain specialist noted at a November 2015 office visit under "history of present complaints" that Plaintiff's daily function and mood had improved, she also noted in the same

section that "overall [her] pain control has WORSENED [sic]."  Tr. 668.
Plaintiff's daily medications at that time are noted, including hydrocodone,
morphine, methocarbamol, and gabapentin, as well as psychiatric medications
including Seroquel, clonazepam, and venlafaxine.  Tr. 668-69.  Objective findings
included more than 11 of 18 fibromyalgia tender points upon physical exam, and
Dr. You's assessment was that Plaintiff's impairments were "not improving."  Tr.
670.  The ALJ provided no explanation or discussion of the general exhibits she
cited here and appears to have selectively cited from visit notes that, upon review,
do not fully support her conclusions.  Tr. 1571-72.

     Finally, the ALJ concluded:

> despite complaints of worsening symptoms and pain, the record shows
> [Plaintiff] reported substantial improvement throughout April 2018
> through September 2022, including reduced pain level and improved
> functioning . . .  This consistent improvement is further incompatible
> with the [Plaintiff's] need to lie down for up to 45 minutes after just
> 30 minutes of activity.

Tr. 1571-72 (citing Tr. 1459-93, 1889-00, 1904-31, 2034-2163).

     The ALJ is required to set forth the reasoning behind his or her decisions in
a way that allows for meaningful review.  *Brown-Hunter v. Colvin*, 806 F.3d 487,
492 (9th Cir. 2015) (finding a clear statement of the agency's reasoning is
necessary because the Court can affirm the ALJ's decision to deny benefits only on
the grounds invoked by the ALJ).  "Although the ALJ's analysis need not be
extensive, the ALJ must provide some reasoning in order for us to meaningfully
determine whether the ALJ's conclusions were supported by substantial evidence."
*Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014).
Here, as discussed *supra*, the ALJ failed to discuss the fact that Plaintiff's pain
medicine included daily hydrocodone through approximately 2020, which was
changed later to Tylenol with codeine; the failure to discuss her daily use of
prescribed narcotic pain medication, including any side effects and/or dependence

has the effect, intended or no, of minimizing her impairments, symptoms, and treatment. *See, e.g.*, Tr. 532, 534, 1606, 2113, 2116. The ALJ also cited generally to hundreds of pages of exhibits, including years of pain clinic treatment notes, with no discussion of objective findings or assessment from the actual visit notes. Tr. 1571-72; *see* Tr. 1459-93, 1889-00, 1904-31, 2034-2163. Without further explanation it is not clear that her treatment constituted conservative treatment, that the records reflect improvement and, if so, when such improvement occurred.

Indeed, the ALJ concluded the records show improvement from April 2018 through September 2022, but Plaintiff's alleged onset date is 2014. Tr. 256, 1571-72. The ALJ's analysis is insufficient, and the ALJ's conclusion that records showed Plaintiff had significant improvement with conservative treatment is also not a clear and convincing reason supported by substantial evidence to discount her symptom claims.

The ALJ failed to provide clear and convincing reasons supported by substantial evidence to discount Plaintiff's symptom claims. Upon remand, the ALJ will reanalyze all medical evidence of record with the assistance of medical expert testimony and reconsider Plaintiff's symptom claims for the entire period at issue.

**C. Step-Three and Step-Five**

Plaintiff contends the ALJ also failed to conduct an adequate step-three analysis, failed to adequately consider listing 14.09D in accordance with Plaintiff's fibromyalgia, and failed to find Plaintiff disabled as meeting or equaling, singly or in combination, listings 1.02A, 14.09A, and 14.09D; and that the ALJ failed to meet her burden at step-five. ECF No. 11 at 16-18, 21. Having determined a remand is necessary to readdress the medical source opinions and Plaintiff's subjective complaints, the Court declines to reach these issues. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for

the reasons stated, we decline to reach [plaintiff's] alternative ground for remand.").

Upon remand, the ALJ is instructed to reperform the sequential analysis with the assistance of medical expert testimony, including the step-three analysis. The ALJ will also reperform the step-five analysis with the assistance of vocational expert testimony.

## CONCLUSION

The ALJ's decision is not supported by substantial evidence and not free of harmful error. Plaintiff argues the ALJ's decision should be reversed and remanded for the payment of benefits. ECF No. 11 at 22. The Court has the discretion to remand the case for additional evidence and findings or to award benefits. *Smolen*, 80 F.3d at 1292. The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id*. Remand is appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). The Court will also not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, the Court notes with dismay that this claim has consumed nearly a decade without reasonable resolution for Plaintiff, despite two remands by this Court. It is not clear to the Court, however, that the ALJ would be required to find Plaintiff disabled, or disabled through the entire period at issue, if all the evidence were properly evaluated. The Court therefore finds that further proceedings are necessary for an ALJ to reconsider the medical evidence, including conflicting medical opinion evidence, reevaluate Plaintiff's symptom claims, as well as to further develop the record with medical expert testimony and perform the five-step sequential evaluation anew. For these reasons, the Court remands this case for further administrative proceedings.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 22

On remand, the ALJ shall obtain all updated medical evidence.  The ALJ shall reevaluate the medical evidence of record with the assistance of medical expert testimony, making new findings on each of the five steps of the sequential evaluation process, take the testimony of a vocational expert, and issue a new decision.  The ALJ shall reassess all medical opinion evidence and medical opinions and shall also reassess plaintiff's subjective complaints, taking into consideration any other evidence or testimony relevant to Plaintiff's disability claim.

Having reviewed the record and the ALJ's findings, the Commissioner's final decision is **REVERSED**, and this case is **REMANDED** for further proceedings under sentence four of 42 U.S.C. § 405(g).

Accordingly, **IT IS ORDERED:**

1.    Plaintiff's Motion to reverse, **ECF No. 11**, is **GRANTED**.

2.    Defendant's Motion to affirm, **ECF No. 17**, is **DENIED**.

3.    The matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4.    An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to update the docket sheet to reflect the substitution of Martin O'Malley as Defendant and file this Order and provide copies to counsel.  **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED March 11, 2024.



_____
ALEXANDER C. EKSTROM
UNITED STATES MAGISTRATE JUDGE